IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MERLE D.,[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 25 C 14358** |
| v. | ) | |
| | ) | **Magistrate Judge Gabriel A. Fuentes** |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**[2]

Plaintiff Merle D., proceeding *pro se*, has filed a brief and motion in support of reversing and remanding the Commissioner's decision denying her application for Disability Insurance Benefits ("DIB") (D.E. 19, "Pl. Mem."), and the motion is now fully briefed. For the reasons set forth below, the Court denies Plaintiff's motion and affirms the Commissioner's decision.

**BACKGROUND**

**I.        Procedural History**

Plaintiff applied for DIB on May 29, 2024, alleging a disability onset date ("AOD") of December 31, 2014.[3] Her date last insured ("DLI") was March 31, 2017.[4] (R. 11.) After a hearing

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] On December 8, 2025, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 10.)

[3] Although in both her opening and reply briefs Plaintiff asserts that her case begins with a February 2023 award of benefits (*see* Pl. Mem. at 3; D.E. 24: Pl. Reply at 1), as the Court explains below, the 2023 decision, which stems from July 2021 applications for supplemental security income and Medicare coverage, is not part of the procedural history of the case before this Court.

[4] The claimant must establish disability between her alleged onset of disability and her date last insured. *Pufahl v. Bisignano*, 142 F.4th 446, 452 (7th Cir. 2025).

on October 3, 2024, at which Plaintiff proceeded *pro se* after waiving her right to counsel, the Administrative Law Judge ("ALJ") issued a written decision on October 30, 2024, finding Plaintiff was not entitled to DIB because she performed substantial gainful activity ("SGA") from her AOD to the DLI. (R. 11.) Plaintiff appealed, and on January 14, 2025, the Appeals Council ("AC") vacated and remanded the ALJ's decision, with instructions for the ALJ to obtain a breakdown of Plaintiff's monthly earnings for 2015 through 2017, and to "[e]valuate whether there was a continuous 12-month period in which the claimant did not engage in SGA" during the relevant time period (from her AOD of December 31, 2014 through the DLI of March 31, 2017), and "if so, whether the claimant was disabled and entitled to disability insurance benefits at any time through her date last insured." (R. 185-86.) After remand, Plaintiff provided detailed payroll records from her employer for the requested period (R. 382-90), and the ALJ held a hearing on July 8, 2025. (R. 11-12.) Plaintiff again waived her right to counsel and chose to appear and testify without the assistance of an attorney or other representative. (R. 36-38.) On July 31, 2025, the ALJ issued another opinion denying Plaintiff's application for DIB.[5] (R. 11-24.)[6]

## II.      The ALJ Obtained a Valid Waiver of Plaintiff's Right to Counsel.

Although Plaintiff does not raise this in her briefing, because she is proceeding *pro se*, the Court has independently considered the issue and finds that the ALJ obtained a valid waiver of Plaintiff's right to counsel before allowing her to proceed *pro se* at the hearing. Claimants have a

---

[5] Plaintiff had filed an earlier application for DIB on November 30, 2021, with an alleged onset date of January 1, 2015, which was denied. (R. 13.) The ALJ found the DIB application at issue here constituted an implied request to reopen the denial of the November 30, 2021 application. (*Id.*) The ALJ considered the new payroll records regarding Plaintiff's work from 2015 to 2017 to be new and material evidence that warranted good cause to reopen the determination. (*Id.*) This procedural status does not affect this Court's review of the pending appeal.

[6] The Appeals Council subsequently denied review of the opinion (R. 1-3), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

2

statutory right to counsel which they can waive "once advised of (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019), citing 42 U.S.C. § 406. Here, the Social Security Administration ("SSA") sent multiple letters before Plaintiff's hearing attaching a document entitled "Your Right to Representation," which contained the required admonishments to establish waiver. (*See, e.g.*, R. 265-73; 309-10.) Moreover, in response to the ALJ's questions, Plaintiff testified at the hearing that she understood her right to legal representation and decided to proceed without a representative after speaking with attorneys who declined to take her case. (R. 36-38.) This constituted adequate notice and explanation to Plaintiff of her right to representation. *See Jozefyk*, 923 F.3d at 496-97 (holding that mailed notices from SSA like the "Your Right to Representation" pamphlet adequately advises a claimant of their right to counsel, "especially [] when the ALJ issues the claimant an oral reminder at the hearing" confirming they are "appearing without an attorney and ... aware of [their] right to counsel").

**III.     The February 2023 ALJ Decision Does Not Affect the Decision in This Case**.

On July 12, 2021, three years before the DIB application in this matter, Plaintiff filed two applications under the Social Security Act (the "Act"), alleging a disability onset date of May 25, 2020: (1) a Title II application for Medicare coverage under sections 216(i) and 223(d) as a former government employee (a Medicare Qualified Government Employee ("MQGE") claim); and (2) an application for supplemental security income ("SSI") under section 1614(a)(3)(A). (R. 140.) Based on Plaintiff's earnings, the ALJ calculated that Plaintiff had acquired sufficient quarters of coverage to remain insured *for purposes of the MQGE claim* through September 30, 2025. (R. 141.) After a hearing, on February 23, 2023, an ALJ issued a partially favorable decision finding

Plaintiff had become disabled beginning on June 3, 2021, for purposes of both the MQGE and SSI claims; SSA would "advise the claimant regarding the nondisability requirements for these payments, and if eligible, the amount and the months for which payment will be made." (R. 154.)

In her hearing testimony and briefs (including her supplemental "Notice to the Court Regarding Administrative Record" (D.E. 22)), Plaintiff primarily argues that SSA has not paid her what she was entitled to under the February 2023 decision. She believes that the July 2025 decision denying her DIB was a front or a means for SSA to "overrid[e]" and "decline[] to effectuate" the favorable February 2023 decision. (*Id.*) At the July 2025 hearing, Plaintiff testified that the SSA field office and payment center refused to process her payment for the February 2023 award because she had a pending DIB claim, and she believed that the payment center would deny her the previously awarded benefits if her current DIB claim was denied. (R. 54-57, 81-82.)

Plaintiff is understandably frustrated. The process of applying for Social Security benefits, which Plaintiff has gone through several times, is not easy, and the different standards and regulations that apply to different types of Social Security benefits can be confusing. A *different* date last insured applies to Plaintiff's MQGE and SSI claims than to her DIB claim. The Act and its regulations calculate the DLI for DIB claims *differently* than they do for MQGE claims. While the February 2023 opinion explained that Plaintiff had acquired sufficient quarters of coverage to remain insured *for purposes of the MQGE claim* through September 30, 2025, the July 2025 decision calculated – correctly – that Plaintiff had acquired sufficient quarters of coverage to remain insured *for purposes of the DIB claim* only through March 31, 2017. (R. 14.) The ALJ who denied Plaintiff's DIB claim in July 2025 was correct in her explanations to Plaintiff at the hearing and in her decision, that the February 2023 opinion:

> involved MQGE and SSI benefits with an alleged onset date of May 25, 2020; this
> case involves an application for disability insurance benefits (DIB) with an alleged

onset date of December 31, 2014, long before she was found to be disabled for MQGE and SSI purposes. To reiterate, nothing in this decision changes anything about the prior partially favorable ALJ decision dated February 23, 2023.

(R. 12-13.) The MQGE and SSI claims from the February 2023 decision were not before the ALJ on the DIB claim, and they are not before this Court now. Plaintiff believes she has not received the benefits to which she was entitled under the February 2023 decision awarding MQGE and SSI benefits. Plaintiff understandably feels this is unfair. But neither this Court nor the July 2025 ALJ has the ability to right any wrong with the payment or lack thereof as to the February 2023 decision. We now turn to the issue before this Court: review of the July 2025 ALJ decision.

**IV.     The ALJ Decision**

The ALJ applied SSA's five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ corrected the error from the October 2024 opinion and, considering Plaintiff's updated earnings records, determined that within the period at issue for DIB, from the AOD of December 31, 2014 through the DLI of March 31, 2017, Plaintiff did not engage in SGA from November 2015 through March 2017, but that for the remainder of the relevant time period, Plaintiff was engaged in SGA as a substitute teacher at a school and thus not entitled to DIB. (R. 16-18.) With regard to the period from November 2015 through March 2017, the ALJ continued with the sequential evaluation analysis. (R. 19.) At Step Two, the ALJ found that Plaintiff had the medically determinable impairments of hyperhidrosis, hyperlipidemia, and obesity, but that they were not severe alone or in combination; the ALJ found that Plaintiff's other alleged impairments were not medically determinable. (R. 19-21.) Therefore, the ALJ necessarily found, pursuant to 20 C.F.R. § 404.1520(c), that Plaintiff was not disabled under the Act from December 31, 2014, the AOD, through March 31, 2017, the DLI, without proceeding through the remaining sequential steps. (R. 24.)

5

**ANALYSIS**

**I.     Legal Standard**

At Step Two, it is Plaintiff's burden to prove her impairments meet the severity threshold. *See generally Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). An impairment is not severe when the evidence establishes "only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work..." Social Security Regulation ("SSR") 85-28. In other words, Plaintiff has the burden to show that her alleged impairments had "more than a minimal effect" on her ability to do basic work activities. *Kelley v. Colvin*, No. 24-1587, 2025 WL 25959, at *4 (7th Cir. Jan. 3, 2025); *see also* 20 C.F.R. §§ 404.1521, 404.1522(b). Once an ALJ determines that a claimant "do[es] not have any impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities," the ALJ "*will find* that [they] do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. § 404.1520(c) (emphasis added).

An ALJ's decision that a claimant is not disabled under the Act will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.

"Our role is extremely limited, and we do not reweigh evidence, make credibility determinations, or substitute our judgment for the ALJ's determination." *Cain v. Bisignano*, 148 F.4th 490, 496 (7th Cir. 2025) (internal quotations omitted).

## II.     Legal Analysis

Plaintiff argues that the ALJ's determination was erroneous for several reasons, the primary reason being that based on the February 2023 ALJ decision, the ALJ erred by "reopening the medical determination" and failed to "reconcile" the February 2023 decision (including the different alleged onset date and date last insured) with the July 2025 decision, which Plaintiff concludes must be due to administrative bias. (Pl.'s Mem. at 2-3.) As explained above, however, the February 2023 decision contained *no* findings with regard to DIB, and the AOD and DLI in this case are based on Plaintiff's DIB application, which she filed after the February 2023 decision, on May 29, 2024. The alleged onset date and date last insured are *different* in the DIB case than the earlier SSI and MQGE applications, and the ALJ assessed medical and record evidence from the time period at issue in the DIB case – November 2015 through March 2017 – which is a different relevant time period from the one at issue in the SSI/MQGE case. Thus, the ALJ did not reopen any prior medical decisions.

In addition, Plaintiff argues that the ALJ erred: (1) in assessing Plaintiff's alleged anxiety and obesity; (2) in "equating activities of daily living (ADLs)"; (3) and by failing to create a formal RFC (residual functional capacity) or call a vocational expert at the hearing. (*Id*.) For the reasons below, the ALJ did not err, and the ALJ's decision was supported by substantial evidence.

### A.     The ALJ's Determination of Plaintiff's Levels of SGA During the Relevant Time Period Was Supported By Substantial Evidence.

Initially, the Court finds that the ALJ's determination that Plaintiff did not engage in SGA from November 2015 through March 2017, and that for the remainder of the relevant time period

7

(December 31, 2014 through March 31, 2017), Plaintiff was engaged in SGA, was supported by substantial evidence. (R. 16-18.) The ALJ's findings and calculations as to Plaintiff's DLI for purposes of DIB and Plaintiff's work activity were detailed and well-supported with citations to evidence in the record. (R. 16, 18-19.) Plaintiff argues in her reply brief that her earnings were below SGA levels, and thus that her "work history should not be used as a technical basis for denial" (Reply at 1), and her earnings were *not* used as a basis to deny her DIB from November 2015 through March 2017. Her earnings only rose to SGA levels from December 31, 2014 through October 2015, and the ALJ correctly denied Plaintiff DIB for that 10-month period. For the period from November 2015 through March 31, 2017, during which the ALJ properly found that Plaintiff had not engaged in SGA, the ALJ proceeded with the SSA's sequential analysis to determine whether Plaintiff was entitled to benefits.

**B.** **The ALJ's Determination that Plaintiff Did Not Have a Severe Impairment or Combination of Impairments Was Supported By Substantial Evidence**.

The ALJ followed the Social Security regulations in determining whether Plaintiff had an impairment or combination of impairments that were severe. First, the ALJ determined whether Plaintiff had a medically determinable physical or mental impairment, which is an impairment "that can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by objective medical evidence." 20 C.F.R. § 404.1521. Plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion" does not establish the existence of an impairment. *Id.* Importantly, in a DIB case like this, the medically determinable impairment must be established *before the DLI*, in this case, *before March 31, 2017*. Next, the ALJ considered whether the medically determinable impairments were severe, by evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine whether they "significantly limit [Plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 1522(a).

8

**1. The ALJ's Determination that Plaintiff's Alleged Anxiety and Certain Other Alleged Impairments Were Not Medically Determinable Prior to Her DLI Was Supported By Substantial Evidence.**

Plaintiff alleged that she had multiple medical impairments, including: hyperhidrosis, hyperlipidemia, obesity, anxiety, prediabetes, a facial scar, knee and ankle problems, osteoarthritis, ankle swelling, fatigue, pneumonia, depression, pneumonia, and glaucoma. Of these, the ALJ found that hyperhidrosis, hyperlipidemia, and obesity constituted medically determinable impairments before Plaintiff's DLI, but that the remaining alleged impairments were not medically determinable before Plaintiff's DLI. The ALJ determined that most of these alleged impairments "occurred well after the claimant's DIB insured status expired on March 31, 2017." (R. 21.) The ALJ explained that Plaintiff was not diagnosed with prediabetes until September 2021 and with anxiety until April 2020. (R. 20-21.) Plaintiff testified that after 2014, she was probably done with substitute teaching because it was so stressful (R. 44, 62), but the ALJ pointed out that her only treatment for her alleged anxiety involved talking with her primary care provider at regular appointments; she did not take psychotropic medication or engage in counseling. (R. 20-21.) With regard to Plaintiff's facial scar, with which Plaintiff testified she was too embarrassed to work, the ALJ noted that Plaintiff wrote in her Function Report that the facial scar was the result of surgery she had in 2022, well after her DLI. (R. 21.)

In addition, with regard to alleged knee and ankle problems, the ALJ noted Plaintiff testified that "she had not been diagnosed with any condition until around 2022, when x-rays were performed and she was diagnosed with osteoarthritis." (R. 21.) Moreover, the ALJ found that "there were not any medical signs or laboratory findings to substantiate the existence of these impairments through the claimant's date last insured," and "the record does not reveal any corroborating lay evidence relating back to the claimed period of disability that would support a

9

finding of these impairments prior to the claimant's date last insured." (*Id.*) Similarly, the ALJ found that ankle swelling, fatigue, pneumonia, depression, and glaucoma were not medically determinable impairments before the DLI because "the record is silent on these conditions;" there was no medical evidence to establish any of them as medically determinable impairments.[7] (*Id.*) Plaintiff testified that her ankles were swollen every day from November 2015 through March 2017, and that gave her trouble with the stairs when she was substitute teaching, but that she did not have treatment for her ankles at that time. (R. 58, 63-67, 69.) Plaintiff's testimony and statements are not enough to establish them as medically determinable impairments.

Finally, the ALJ reviewed Plaintiff's testimony that she was hospitalized with pneumonia for two days in December 2015, before the DLI. (R. 21.) Plaintiff testified that she had had "really bad" chest pains and shortness of breath, "[b]ut you know, but I did go back to work." (R. 41-47, 72-73.) The ALJ reasoned that the pneumonia might have been severe "for a short time," but is not a condition that lasts for the requisite 12 months in duration. (R. 21.) "Regardless, in this case there is no medical evidence to even establish it as a medically determinable impairment." (*Id.*)

The Court finds that the ALJ more than adequately met her burden to provide an explanation for how the evidence led to the conclusion that the aforementioned alleged impairments were not medically determinable. *Warnell*, 97 F.4th at 1054. The ALJ's review of the record in support of her conclusions was detailed and thorough. Not only did the ALJ review the entire record of Plaintiff's DIB application, she also reviewed the record of Plaintiff's previous Social Security applications, including the record behind the February 2023 ALJ decision. The ALJ explained that, although that decision "involved an alleged onset date of May 25, 2020 and resulted in a later onset of June 3, 2021, long after the period at issue in this case," she

---

[7] Regarding her alleged eye problems and glaucoma, Plaintiff testified that her treatment has been limited to applying eye drops. (R. 45-46.)

"nevertheless" acquiesced in Plaintiff's request that the ALJ "'use all medical records' from the prior ALJ's case," and:

> thoroughly reviewed the evidence from that case and found no evidence from the relevant period at issue (the earliest evidence in that case dates to 2019) and no evidence that relates back to the period at issue in this case. Thus, the undersigned did not admit this evidence into the record. However, the hearing office provided the claimant with a copy of the medical evidence from the prior case for her review, and she confirmed receipt on the record at the hearing. Although provided with the opportunity to use the prior medical evidence to support her allegations of disability during the period at issue, she offered no specific evidence or argument when asked at the hearing.

(R. 20.) In addition, the ALJ made multiple attempts to help Plaintiff develop the medical record. After requesting and obtaining from Plaintiff a list of everywhere she received medical treatment between December 31, 2013 through March 31, 2018, the agency sent evidence requests to each of those providers for medical evidence for the period January 1, 2013, through January 1, 2019. (R. 19-20.) After only one of Plaintiff's listed providers responded to the request, the agency made multiple requests for evidence to the other providers, but never received a response. (*Id.*) At the hearing, the ALJ gave Plaintiff the opportunity to provide any additional medical treatment she had received during the period at issue, but she did not provide any additional medical sources. (*Id.*) The ALJ thus more than adequately fulfilled her duty to "fully and fairly" develop the record for the *pro se* Plaintiff, going far beyond "prob[ing] the claimant for possible disabilities [to] uncover[] all of the relevant evidence." *Jozefyk*, 923 F.3d at 497.

> **2. The ALJ's Determination that Plaintiff's Medically Determinable Impairments Were Nonsevere Was Supported By Substantial Evidence.**

As explained above, the ALJ determined that Plaintiff had the medically determinable impairments of hyperhidrosis, hyperlipidemia, and obesity before her DLI. The ALJ then proceeded to evaluate the intensity, persistence, and limiting effects of Plaintiff's alleged

11

symptoms to determine if they were severe in that they "significantly limit[ed] [Plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 1522(a).

The ALJ first noted Plaintiff was diagnosed with hyperhidrosis (excessive sweating) and hyperlipidemia "well before her date last insured," in March 2012. (R. 20.) With regard to hyperhidrosis, the ALJ explained that "the medical evidence for the period at issue contains no objective evidence of reported symptoms, observed medical signs, or recommended treatment." (R. 22.) Further, the ALJ acknowledged Plaintiff's testimony that this condition embarrassed her because it caused her to sweat through her clothing while working, but the ALJ noted that after cooling down in the restroom, Plaintiff returned to her work as a substitute teacher; the condition did not cause her to be absent, and she worked at SGA levels several years after she was diagnosed. (*Id*.) Accordingly, the ALJ concluded that this condition caused no more than minimal limitation in her ability to perform work, and thus it was non-severe. (*Id*.)

Next, the ALJ acknowledged that Plaintiff was diagnosed with hyperlipidemia in March 2012, also well-before her DLI, but that she continued to work at SGA levels after the diagnosis. (R. 22-23.) The ALJ also acknowledged that laboratory evidence from November 2013 showed Plaintiff had a high total cholesterol level but found that "medical records do not include evidence of any subjective symptoms, objective medical findings, or medical treatment provided for this condition." (R. 23.) In addition, the ALJ noted that "at the hearing, the claimant did not identify any symptoms or limitations related to this condition." (*Id*.) Thus, the ALJ found this impairment, too, caused no more than minimal limitations in Plaintiff's ability to work. (*Id*.)

With regard to obesity, the ALJ noted that while medical records document Plaintiff's diagnosis of obesity in March 2012, "there is no evidence of reports of related symptoms, medical observations, or treatment recommendations." (*Id*.) The ALJ acknowledged that Plaintiff "testified

that this condition didn't really affect her ability to work other than potentially 'wearing [her] ankles down,'" but found "there is no evidence during the period at issue," that Plaintiff's obesity was related to her complaints about ankle pain, or her diagnosis with osteoarthritis in 2022. (*Id.*) Thus, the ALJ determined that this impairment was also non-severe. (*Id.*)

In further support of her determination that Plaintiff's medically determinable impairments were not severe, the ALJ determined Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not consistent with "her reported activities during the period at issue." (*Id.*) The ALJ explained that Plaintiff testified at the hearing that "from 2014-2017, she was able to engage in a wide variety of activities, including completing her Master's degree, going to the gym four times per week to use weights and bicycles, doing classes at the gym, taking music and general education classes, preparing her own meals, doing her own errands, and living alone without assistance." (*Id.*) In addition, the ALJ found that Plaintiff's "work activity during the period at issue [was] also inconsistent with her allegations," as "her earnings records showed that she was able to work some of the time [at less than SGA levels] despite her symptoms," and that "she was able to return to SGA-level work after the date last insured, which she attributed to attaining her Master's degree, before she was laid off." (*Id.*) The ALJ also noted that even for the times Plaintiff did not work, Plaintiff testified that it was sometimes "due to business related reasons (school contract issues, end of long-term assignments, and district rules), not solely due to her own medical reasons." (*Id.*)

Once again, the ALJ's analysis was thorough, detailed, and cogent. The ALJ did not equate Plaintiff's ADLs with an ability to work full-time as Plaintiff contends, but rather, the ALJ determined that her ADLs, including the fact that she continued to substitute teach, showed that Plaintiff's claims that she was too disabled too work were not credible. The ALJ's decision that

13

Plaintiff did not show that she had an impairment or combination of impairments that had "more than a minimal effect" on her ability to do basic work activities at Step Two was supported by substantial evidence. Because the ALJ determined Plaintiff did not have a severe medically determinable impairment or a combination of impairments at Step Two, the ALJ found Plaintiff not disabled under the regulations. *See* 20 C.F.R. § 404.1520(a)(4)(ii). The sequential evaluation ends there, and the ALJ neither creates an RFC for Plaintiff nor assesses the testimony of a vocational expert, meaning that the absence of those in the ALJ's opinion was not error.

### CONCLUSION

For the foregoing reasons, the Court finds the ALJ's determination in the July 2025 DIB opinion that Plaintiff was not disabled under the Act from December 31, 2014 to November 2015 due to performing SGA, and from November 2015 through March 31, 2017, because she did not have a severe medical determinable impairment (despite working under SGA levels), was supported by substantial evidence. In other words, the ALJ's determination that Plaintiff was not under a disability, as defined in the Act, during the relevant DIB time period from December 31, 2014, the alleged onset date, through March 31, 2017, the date last insured, was supported by substantial evidence. Therefore, the Court denies Plaintiff's motion for summary judgment and brief in support of reversing and remanding the ALJ's decision (D.E. 19) and grants Defendant's motion and memorandum in support of affirming the decision (D.E. 23).

**SO ORDERED.**

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: April 28, 2026**

14